Case number 19-3550, Southern Iowa, United States v. Oliver Maupin. Good morning and may it please the court, opposing counsel Mrs. Erringer. My name is Michael Pariente and I along with Gabriel Grasso represent Oliver Maupin. Mr. Maupin is a retired, successful businessman with no criminal history who built a successful business in the sound and sold it. Now he sits in prison serving a five-year mandatory minimum sentence because he was growing marijuana in Oregon that unbeknownst to him ended up in Iowa. In fact, he even told the only co-defendant he knew in this case to grow the marijuana by the law, which he meant make sure that you're growing the marijuana pursuant to Oregon's medical marijuana project. What we're asking this honorable court to do is to reverse his conviction and remand his case for a new trial. As Justice Kennedy said in Lawrence v. Texas, times can blind us to certain truths that later generations can see that laws once thought necessary and proper in fact only serve to oppress. Now that was Justice Kennedy who was referring to the sodomy laws and soon we believe that marijuana prohibition will likewise be seen as oppressive. Judge Wilkin, I think you're on mute, sir. Judge Wilkin? Mr. Perry, I think Judge Wilkin is still muted. He'll be back on shortly. Your time has stopped for now. Thank you. I've got a mouse that won't behave this morning. No problem. Counsel, this is Judge Gross. Let me ask a question regarding your argument you were just making. I've read your argument and I hear what you're saying, but it seems to me your argument is one better made to the legislative branch than to the court. Your Honor, and again, we're certainly asking the court to overrule precedent. We are asking the court to modify its holding in Whitfield. We do understand that we're asking for something that has not been done before. We're asking this court to treat marijuana differently, in part because, and the real reason is because of the way the federal government has, in a sense, they have decided not to prosecute marijuana production in a majority of states. Counsel, let me ask you about that. They may have decided that, but let's suppose that the marijuana in question had never left the state of Oregon. Wouldn't the federal government still have had authority to bring charges under the Controlled Substances Act? Your Honor, if the defendant had grown pursuant to the Rohrabacher Far Amendment and complied with the medical marijuana laws of that state, then that is, as the court knows, the Rohrabacher Far Amendment is a rider on the Appropriations Clause. The federal government would be prohibited from prosecuting production of marijuana. Now, as far as in Mr. Mwapin's case, if he just grew the marijuana in Oregon, and now we know that the laws have been expanded, at least at the state levels, to allow recreational marijuana, not just medical marijuana, which is what the Rohrabacher Far Amendment addresses. We know that he could be prosecuted. The reality is, because that marijuana never ended up in Iowa, he would have never been prosecuted if the marijuana had just stayed in Oregon, even if he had technical violations under the Oregon medical marijuana law. Counsel, isn't there testimony in the record, though, that your client knew that some of the purchasers were from Iowa, from one of the farm managers, I think? That was from, Your Honor, that was from some of the co-defendants, who obviously had 5K cooperation agreements, so we dispute that. Our client never knew anything about marijuana or money coming from Iowa. Our client has testified he didn't know anything about Iowa. The problem that Mr. Mwapin had was he trusted this lady, Lamia Sklenecki, who was the co-defendant, one of the co-defendants. The only co-defendant he knew, his longtime girlfriend, she approached him and said, you know, you're buying these properties in Oregon. You should let me go onto the property, because I have experience, because my husband and I used to grow marijuana in California. I'll run the property, and I'll grow the marijuana. We'll split the profits 50-50. Unbeknownst to him, she was part of an Asian crime syndicate in Iowa, and she was taking this marijuana and selling it in, crossing state of Iowa. Yeah, continue, sir. Now, the federal government has decided, as I indicated, not to prosecute marijuana production in a majority of the states. The political climate is favoring decriminalization and legalization. If you take a substance like heroin, it's obviously, it's prohibited everywhere, and it's prosecuted everywhere. The issue with marijuana is the growing of marijuana in states is being respected by the federal government overwhelmingly. Private businesses and states are reaping millions of dollars in tax revenue from the production and sale of marijuana. But not Iowa, correct? Well, my understanding is in Iowa, there is now a medical marijuana, since this trial, there is now, there's medical marijuana dispensaries, but it has not, but marijuana for recreational purposes is not, it is not allowed. And I believe, I'm sorry, was my time four minutes? I just want to make sure I'm not running over. Was the clock set at, was the clock set at 10 minutes? No, I'm, okay, sorry, my clock said four minutes, I'll continue. So it's simply not right to punish Mr. Mwopin to have him bear this burden that no one else is having to bear. It's not right, it violates due process to hail someone across the country when they're growing marijuana legally in a state such as in Oregon, and unbeknownst to them, that marijuana ends up in a state where they're subjected to federal prosecution. If I may shift to address the jury questions. Is that procedural due process or substantive due process that you're arguing? Well, I would have to, I would say procedural, but I recognize that, you know, he's not exactly, he doesn't qualify as, you know, what's the, what's the procedure that you're, that's, that violates due process? Well, what we're, what we're complaining about is that it's not right to subject him to treat him differently than, than other, other. That's, that's not a procedural due process argument. That's a substantive due process argument, which requires shocking the conscience, of course. We recognize that, Your Honor, absolutely. Well, I don't think on this evidence there's, there's even a remote argument that this was conscience shocking. Understood, Your Honor. Your Honor, if I may shift to the jury deliberations. 37 minutes into jury deliberations, the jurors sent a note, a question, and the question was, can the defense attorney call witnesses to the stand that are on the government list? We are specifically asking about fee when. The court, the only response the court should have made was Mlwapen's not calling a witness, calling the witness cannot be considered against him, period. But the court went further. The court went on to talk about the compulsory process. The court said, oh yes, the defendant has the right under the constitution of compulsory process, which means he can call witnesses whether or not they are on the government's list or not. But also remember that a defendant has no burden of proof here or any duty to call witnesses or present evidence. The problem with that answer is that the judge needs to understand that, know his audience. And in this case, this, this answer was more, it's more suitable. If you're, if you're teaching a class to constitutional law, you're addressing other lawyers. These are lay persons. These are lay persons that don't understand. They don't deal with these terms of reasonable doubt, burdens of proof, compulsory process. They don't deal with these on a daily basis. All the judge had to do was tell the jurors to, but they were not to consider, not to consider that just to consider the jury instructions and, and the evidence before them. The court's instruction in this case was an abuse of discretion and it permitted the jury to therefore, and also that, that because Mr. Wynn didn't, wasn't called that somehow Mr. Mwopin had something to hide. It unconstitutionally shifted the burden of proof to, to the defense. Finally, as far as the other, the other jury question, the first question was, must a, this was a question three, the last questions asked two questions in that must the defendant in a conspiracy with all members and with all members or just a must a conspiracy, must defendant be in a conspiracy with all members or just a single member or already, already established Iowa conspirator group? The, the judge answered the final instruction seven. He, he read that it's an entirety. The second question dealt with, does the defendant have to know, have knowledge of intent or pot being sold and delivered to Iowa? And the answer to that, the judge provided was no. Again, that was totally unnecessary. All the judge had to do was to tell the jurors to refer to the instructions and not answer the questions for them. The judge is in a very powerful position that the jurors listen to that judge and give that, that judge's words, you know, uh, importance as they should. Jurors are even told that what the lawyers tell them is not evidence. So in light of that, it looks like I'm, I'm over my, my time alone. Counsel's judge Logan lump. Let me ask, do you have a, do you have a case that where a judge was found that the felon court said there was an abuse of discretion because the judge did not refer to the, just refer to the instructions, the initial instructions, but instead gave, instead gave a legally accurate supplemental answer. No, your honor. It's just that the, the, what the cases that we've cited, we could not find a case directly on point and answered your question. Well, I, I understand, I understand the, the, the logic of the argument, but, uh, for an appellate court to translate that logic into abuse of discretion is, is a difficult leap. Thank you, your honor. Good morning, your honors. Thank you. Good morning, your honors. May it please the court, Mr. Pratt. This is Melissa Zerringer on behalf of the government. This case involves a sophisticated conspiracy to manufacture and distribute marijuana. Um, all across the nation. There's many co-conspirators, several not charged. In this case, we had, um, over 10 charged in this conspiracy. Over a hundred pounds of marijuana was dealt with, um, thousands of dollars. The defendant's role in this case was the financier of two grow operations in Oregon. Um, during the time that he set those up, he recruited growers. He then looked at the laws of Oregon and on paper, tried to comply with those laws. However, um, knew those laws and did not comport with those. In fact, he recruited patients from Nevada, um, and signed them up under the grow operations, which was not legal to do under Oregon law. He then of course, benefited from the sale of marijuana that went across the nation, including to here in Iowa. The evidence is that the defendant knew that the marijuana was not in compliance with Oregon laws and that it was going to Iowa. In fact, he met with members of the Iowa conspiracy in Nevada and accepted $12,000 for, um, profits of selling marijuana. Now looking at the first issue, um, we have basically, this is a, um, the defense is wanting you to override the federal, um, controlled substance act. Um, this is not a new argument as stated in my brief. There are several courts that have considered this, um, and indicated obviously that the supremacy clause is what rules here. In fact, um, if there is a federal law, um, and state law are in conflict, then the federal law prevails. Um, I would also say that the federal counsel, this is judge Gross. Let me ask you a kind of an offshoot of that subject. Um, your opposing counsel says that a writer to an appropriations bill would prohibit, uh, this type of prosecution. But my question is this, can a writer to an statute? We don't believe that it can be a remedy to that. It wouldn't be to avoid the prosecution. It would be some sort of separate sanction against the agency that inappropriately spent, uh, spent the money. Right. That's I w I would agree with that fact, your honor. Um, and then also along this lines of this argument is that the defendant wasn't in compliance with the Oregon marijuana laws. And so even if, um, they determined that this federal law should be taken off the books and that we shouldn't prosecute controlled substance acts violations. Um, there were several areas in which the defendant was not in compliance with the Oregon laws, um, as stated before the marijuana was not only going to Iowa, but it was going to other States across the nation. Um, the marijuana, according to Oregon law, um, belong to the patients. Um, and the growers did not have authority outside of the patients telling them what to do with the excess marijuana. If in fact there was any, these patients were signed up, not as patients. The defendant did not want to supply medical marijuana to these patients. He was in this conspiracy, um, to make money and was not complying with the Oregon laws. Your honor, moving on to issue number two, which is the jury questions. Um, looking at jury question number one, the defense argues that this shift, the judge's answer shifted the burden to the defense. First, I'd point out that this question by the jury was invited by the defense. Um, the trial record shows in closing, um, the defense arguing information, um, and suggesting that there was information that the government government did not present through this witness that might've been helpful to the defendant. So it wasn't surprising that the defense, or excuse me, that the jury asked this question. First, I would point out, um, the defense just read you that question. Number one, um, the answer to which the judge gave does not shift the burden. It answers the question directly, and it's an accurate statement of the law. And when you read this in conjunction with the other jury instructions, it's clear, clearly conveys that it is not shifting the burden. And in fact, the second paragraph of that answer says, but also remember that if defendant has no burden of proof here or any duty to call witnesses or present evidence. So when the defense argues that it shifts the burden, it is merely looking at the first paragraph of the response and doesn't consider the second paragraph. Counselor, excuse me. I think your camera's off. I can see myself here. I don't judge Logan. We can see her here in St. Louis. I don't, I don't, okay. I don't, I don't have that. That's all right. I'm the audio is, is just fine. So, okay. But I, I don't have a picture and, and when you, what it is now flashing on and off with just a little emoji or whatever you call a symbol when the camera's off. That's all right. Just go, go ahead with the argument. Okay, certainly. And so let's look at the second question or it would be the third question posed by the jury that the defense argues. And in looking at that question the court does shift the jury's attention back to the final injury instructions and the definition given regarding agreement. And then it simply answers the question number two. The judge has a duty to answer the questions posed by the jury. And in this case he did it succinctly and in accordance with the law. And in this particular case, the defense argues, first of all, that this jury instruction goes to intent. And when they talk about specific intent in their brief, they say that the defense, or excuse me, that the government has to prove the defendant had specific intent to conspire to goes to. It goes to the underlying crime being committed by some members of the conspiracy, what we certainly presented. Next, this issue goes to venue. And I would point out that there was no objection by the defense attorney to the venue instruction given in instruction number five of the final jury instructions. And that final jury instruction is similar to that in the Renteria case out of the Third Circuit. And that case is the leading case in the majority position regarding the reasonable foreseeability test that is argued by the defense in their brief. The Third Circuit holds that they did not adopt the reasonably foreseeable test. Counsel, why are you saying that this is a venue issue? I didn't read the brief as raising a venue issue. You're just inserting it and then knocking down a straw man, aren't you? So in the defendant's brief, he indicates that the heart of the issue as to the jury instruction number three, or excuse me, the jury question, he said is whether the defendant knew that the marijuana was being sold not legally in Oregon, but illegally in Iowa. And he says that that goes to intent and venue. And so that is why I'm sorry. Well, it's a mens rea argument. Correct. Correct. And he indicates in his brief. Was there an objection to venue in the district court? Initially, there was an objection. And then we discussed the jury instructions. And at the point that the final jury instructions were made, there was no objection to the venue instruction. Right. And it's not an issue presented for review on appeal. And so with all respect, you're making work for us here. You're suggesting we have to discuss an issue that was not raised on appeal. Well, I certainly don't want to make more work. No, that's not good tactics. So I'll go on to issue number three then, if there's no questions. As far as issue number three, the defense argues that the safety valve should have applied to the defendant in this case. In looking at the sentencing transcript, the judge makes it clear that there are two ways in which the defendant was not, would not apply for safety valve, first being the organizer leader. And also the court found that the statement that he made to the agent and the prosecutors was not truthful for that safety valve interview. First in discussing the organ, or excuse me, organizer leader, looking at role under the recruitment, how profits were divided, the nature and scope of the criminal act and the degree of authority. And in this particular case, we see that the defendant recruited the two growers to go up to Oregon and participate in the daily grow operations. As they were growing the marijuana, they were in almost daily contact with the defendant regarding the production of the marijuana. After one of the growers left the property within a year, he then recruited a second, or excuse me, the third grower to take over that property and continue to grow. Also, the defendant recruited patients, as I mentioned earlier, to come in to however, knowing that that was a violation of Oregon law. Finally, the defendant did give a safety valve interview. And as noted by the district court judge during that interview, the defendant essentially denied all of those things that made him an organizer leader. So he consistently said that he did not recruit or watch over this through his growers. However, that is not supported in the record. Therefore, it's the government's position that the safety valve, not applying the safety valve was appropriate in this case. If there are no further questions, I respectfully request the court to affirm the district court. Thank you, Mr. Perriente for rebuttal. Thank you, your honor. First of all, if I could just go back as far as recruiting growers, it's our position that this was really Ms. Slinecki. She was the person who went to Oregon. She was the one growing the marijuana. As far as at the time that Ms. Zieringer talks about how it was illegal to sign up patients who are out of state, at the time that Mr. Mwapin did that, it was legal. The law later changed under Oregon state law to prohibit that. Again, Mr. Mwapin, it's undisputed that Mr. Mwapin told the co-defendant, Ms. Slinecki, who even testified in the trial, that he always told her to grow it by the law. So if he's telling her to grow it by the law, it's not believable that he's okay with them violating the law. As far as Ms. Zieringer said that no one identified, first of all, no, she said that there were witnesses who identified Mr. Mwapin. That's not correct. In fact, none of the witnesses ever pointed to Mr. Mwapin and identified him, not even the co-defendant, that was the fault of the government, not calling her to identify him. So that is not true. Mr. Hebe was one of the witnesses that testified and had come down to Las Vegas, but when asked to identify Mr. Mwapin, he could not do so in court. As far as these technical, there are technical violations. We don't believe that that by itself should have subject him to federal prosecution. As far as Mr. Mwapin, his basic, his, his, his, the main role of Mr. Mwapin was financing this. He was someone who had the money to buy these two lots of land, the Draper property and the Deer Creek property. These were two properties he bought, which were the intent to speculate, to sell these properties. It was the co-defendant, Ms. Slinecki, who told her she had experience in to move to Oregon to grow the marijuana. Mr. Mwapin remained in Las Vegas. He was not involved in growing it. As far as the, Ms. Serringer says that, again, this is the, she refers to the jury instruction regarding the, the burden of proof, the compulsory process. She says, well, it's a true statement of the law. Again, why go there? Why, why not just say that, that, that Mr. Mwapin's ability to call witnesses is something that can't be held against him. It creates too much confusion, I think, for jurors when they're having to consider this new concept, something you've never heard about called the compulsory process. It gets them wondering why didn't this- What about the argument that you opened the door to that sort of instruction by arguing that there was some testimony out there that the government chose to hide from the jury? Well, what happened was, Your Honor, they, there was a witness. They indicated that they were going to call these witnesses. They had all these people on the witness list. And then when they're, when, when they realized that these witnesses were not backing up the story that, oh, it was Mr. Mwapin, that, you know, that they were not able to identify him, then that's what happened, is that they, you know, they didn't call Mr. Nguyen because he was not able to corroborate their story. So that's why we, that's why we brought that up, that we, we made reference to that. Why didn't they call him? And it looks like I'm, I'm out of time. Very good. Thank you, counsel. The case has been thoroughly briefed and argued, and we will take it under advisement.